# NATIONAL REGISTERED AGENTS, INC
## SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To:  DORI BERGDORF
DTL BUILDERS INC.
13077 S 3600 W
Riverton, UT 84065-6328

SOP Transmittal #  **531397753**

800-592-9023 - Telephone

Entity Served:  DTL BUILDERS INC. (Domestic State: UTAH) (Served as DTL BUILDERS, INC., etc., et al., Dfts. Name discrepancy noted.)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc or its Affiliate in the State of OREGON on this 13 day of June, 2017. The following is a summary of the document(s) received:

1.  **Title of Action:**  RI KY ROOFING & SHEET METAL, LLC, etc., Pltf. vs. DTL BUILDERS, INC., etc., et al., Dfts.

2.  **Document(s) Served:**  Other: Summons/First Amended Complaint/Attachment(s)

3.  **Court of Jurisdiction/Case Number:** Linn County Circuit Court, OR
    Case # 17CV23952

4.  **Amount Claimed, if any:**  N/A

5.  **Method of Service:**

    _X_ Personally served by:     _X_ Process Server     ___ Law Enforcement     ___ Deputy Sheriff     ___ U. S Marshall

    ___ Delivered Via:     ___ Certified Mail     ___ Regular Mail     ___ Facsimile

    ___ Other (Explain):

6.  **Date and Time of Receipt:**  06/13/2017 02:17:00 PM CST

7.  **Appearance/Answer Date:**  Within 30 days from the date of service of this summons upon you

8.  **Received From:**     Darien S. Loiselle
    Schwabe, Williamson & Wyatt, P.C.
    Pacwest Center, Suites 1500-1900
    1211 SW Fifth Avenue
    Portland, OR 97204-3795
    503-222-9981

9.  **Carrier Airbill #** 1ZY041160192796241

10. **Call Made to:** Not required

11.  **Special Comments:**
SOP Papers with Transmittal, via UPS Next Day Air

Image SOP

Email Notification, DORI BERGDORF  DORI.BERGDORF@DTLBUILDERS.COM

**NATIONAL REGISTERED AGENTS, INC**

**CopiesTo:**

Transmitted by  Amy McLaren

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL



**EXHIBIT**
**A**

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF LINN

RI KY ROOFING & SHEET METAL, LLC, an Oregon Limited
Liability Company,

        Plaintiff,

    vs.

DTL BUILDERS, INC., a Utah Corporation, EVA ROPP dba
Waverly Land Management, and WINCO FOODS, a
Delaware corporation,
        Defendants.

No. 17CV23952

**SUMMONS**

**To:**    DTL Builders, Inc.
        c/o Registered agent, NRAI
        388 State Street, Suite 420
        Salem, OR 97301

You are hereby required to appear and defend the complaint filed against you in the above-entitled action within thirty (30)
days from the date of service of this summons upon you, and in case of your failure to do so, for want thereof, plaintiff(s)
will apply to the court for the relief demanded in the complaint.

**NOTICE TO THE DEFENDANT: READ THESE PAPERS**
**CAREFULLY!**

You must "appear" in this case or the other side will win automatically.
To "appear" you must file with the court a legal paper called a "motion"
or "answer." The "motion" or "answer" must be given to the court clerk
or administrator within 30 days along with the required filing fee. It must
be in proper form and have proof of service on the plaintiff's attorney or,
if the plaintiff does not have an attorney, proof of service upon the
plaintiff.

If you have any questions, you should see an attorney immediately. If
you need help in finding an attorney, you may contact the Oregon State
Bar's Lawyer Referral Service online at www.oregonstatebar.org or by
calling (503) 684-3763 (in the Portland metropolitan area) or toll-free
elsewhere in Oregon at (800) 452-7636.

SIGNATURE OF ATTORNEY FOR PLAINTIFFS

| **Darien S. Loiselle** | **925796** |
|---|---|
| ATTORNEY'S NAME | BAR NO. |

**1211 SW Fifth Avenue, Suite 1900**
ADDRESS

| **Portland, Oregon 97204** | **(503) 222-9981** |
|---|---|
| CITY   STATE  ZIP | PHONE |

TRIAL ATTORNEY IF OTHER THAN ABOVE
                                  BAR NO.

STATE OF OREGON, County of Multnomah ) ss.

I, the undersigned attorney of record for the plaintiff, certify that the foregoing is an exact and complete copy of the original
summons in the above entitled action.

Darien S. Loiselle
ATTORNEY OF RECORD FOR PLAINTIFF(S)

TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS:  You are hereby directed to serve a true copy of this
summons, together with a true copy of the complaint mentioned therein, upon the individual(s) or other legal entity(ies) to
whom or which this summons is directed, and to make your proof of service on the reverse hereof or upon a separate
similar document which you shall attach hereto.

Darien S. Loiselle
ATTORNEY(S) FOR PLAINTIFF(S)

SCHWABE, WILLIAMSON & WYATT
Pacwest Center, Suites 1500-1900
1211 SW Fifth Avenue
Portland, OR 97204-3795
Telephone (503) 222-9981

**Page 1 – SUMMONS**
PDX\022222\100MAI\DSL\20937234.1

6/13/2017 12:00:14 PM
17CV23952

1

2

3

4              IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                         FOR THE COUNTY OF LINN

6   RI KY ROOFING & SHEET METAL, LLC,
    an Oregon Limited Liability Company,
7                                                    No. 17CV23952
              Plaintiff,
8                                                    FIRST AMENDED COMPLAINT
         vs.
9                                                    NOT SUBJECT TO MANDATORY
    DTL BUILDERS, INC., a Utah Corporation,          ARBITRATION
10  EVA ROPP, dba WAVERLY LAND
    MANAGEMENT, and WINCO FOODS, a                   (Foreclosure, Breach Of Contract)
11  Delaware corporation,
                                                     CLAIM AMOUNT: $131,119.18
12            Defendants.
                                                     ORS 21.160(1)(c) (Filing Fee $531.00)
13

14       For its Complaint against defendants, plaintiff alleges:

15                                    1.

16       At all material times, plaintiff RI KY ROOFING & SHEET METAL, LLC ("Ri Ky")

17  was and is an Oregon limited liability company, licensed to conduct business in the State of

18  Oregon under Registry number 422944-96 and properly licensed by the Oregon Construction

19  Contractors Board under license number 176541.

20                                    2.

21       At all material times, defendant DTL Builders, Inc. ("DTL") was an active Utah

22  corporation, registered to do business in Oregon under Registry number 828768-98 and properly

23  licensed by the Oregon Construction Contractors Board under license number 196063.

24                                    3.

25       Defendant EVA ROPP, dba WAVERLY LAND MANAGEMENT ("Ropp") was at all

26  relevant times the owner or reputed owner of the property located at 3100 Pacific Blvd SE, in the

Page 1 -   FIRST AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\022222\100MAN\MAN20965207.1

1    City of Albany, County of Linn, State of Oregon, ("the Property").

2                                          4.

3          At all material times, defendant WINCO FOODS, LLC ("WinCo") was an active

4    Delaware corporation, registered to do business in Oregon, and the owner/lessee of the

5    improvement located on the Property herein which is also referred to as WinCo #143 ("the

6    Improvement").

7                                          5.

8          On or about August 23, 2016, Ri Ky and DTL entered into a subcontract for the

9    performance of construction services (the "Services") to furnish labor, material, and construction

10   and roofing services for the Improvement. A copy of the Subcontract for the Services is attached

11   as Exhibit 1.

12                                         6.

13         Pursuant to the subcontract, Ri Ky did in fact provide roofing services to the Property and

14   Building. DTL and WinCo had actual knowledge of Ri Ky's construction services. Ri Ky

15   invoiced DTL for services under the subcontract. Copies of those invoices are attached as

16   Exhibit 2.

17                                         7.

18         Ri Ky fully performed all terms and conditions of the subcontract on its part to be

19   performed, or those terms and conditions were waived.

20                            **FIRST CLAIM FOR RELIEF**

21                         **Foreclosure of Construction Lien**

22                                         8.

23         Ri Ky realleges and incorporates paragraphs 1 through 7 above.

24                                         9.

25         On or about January 2, 2017, Ri Ky began providing construction services in furtherance

26   of the planned construction of the property and for the Property's benefit and improvement. On

Page 2 -   FIRST AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\022222\100MAI\MAI\20965207.1

1    or about February 28, 2017, Ri Ky provided DTL with 48hours notice of its intent to resign from

2    providing these services, pending payment of outstanding invoices. On or about March 16,

3    2017, Ri Ky ceased providing services to DTL. The price and reasonable value of the

4    construction services Ri Ky provided to DTL, and incorporated into the planned construction of

5    the Property that remains due is $131,119.18.

6                      10.

7          On April 27, 2017 and pursuant to ORS 87.010 and 87.025, Ri Ky filed with the

8    recording officer of Linn County, Oregon, a Claim of Construction Lien ("Lien") containing a

9    true statement of its demand after deducting all just credits and offsets, the name of the owners or

10    reputed owners of the Property and the improvement, the name of the Contractor to whom Ri Ky

11    furnished professional roofing and construction services and a description of the Property

12    sufficient for identification, including the address. The Lien was verified by the oath of a person

13    having knowledge of the facts, and it was recorded on April 27, 2017, as recording number

14    2017-07575 of the deed records of Linn County, Oregon. A true copy of the Lien is attached

15    hereto as Exhibit 3 and is incorporated herein by this reference.

16                      11.

17          As of the date of the Lien, a balance remains due and owing of $131,119.18 plus interest

18    at the rate of eighteen percent (18%) per annum from the date owed until paid. Despite demand,

19    this amount remains due and owing to Ri Ky.

20                      12.

21          On or about May 4, 2017, Ri Ky mailed a notice in writing to all defendants by certified

22    mail, return receipt requested, and by regular mail, stating that such Lien has been filed.

23                      13.

24          More than ten (10) days prior to filing its Complaint, Ri Ky delivered notice in writing to

25    all defendants, and all persons and entities with ownership interest, stating that Ri Ky intended to

26    commence suit to foreclose its Lien unless such Lien was paid within ten (10) days of such

Page 3 -   FIRST AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

1    notice.

2                                    14.

3        Pursuant to ORS 87.060(5), Ri Ky is entitled to the $46 it paid to Linn County, Oregon,

4    for recording the Lien, and $700.00 for the cost of the foreclosure guarantee.

5                                    15.

6        Pursuant to ORS 20.096, Ri Ky is entitled to its reasonable attorney fees, costs, and

7    disbursements.

8                                    16.

9        Pursuant to ORS 20.190, Ri Ky is also entitled to a prevailing party fee.

10                                   17.

11       Ri Ky has no plain, speedy, or adequate remedy at law.

12                        **SECOND CLAIM FOR RELIEF**

13                            **(Breach of Contract)**

14                                   18.

15       Ri Ky realleges and incorporates paragraphs 1 through 17 above.

16                                   19.

17       Under the Subcontract, DTL agreed to pay the reasonable value of the construction

18   services.

19                                   20.

20       Despite demand, Davises have failed to pay the sum of $131,119.18 plus interest at

21   eighteen (18%) per annum from December April 14, 2017 until paid.

22                                   21.

23       DTL failed to pay the construction fees per the Subcontract, they are in breach of the

24   contract.

25                                   22.

26       Pursuant to the Subcontract, paragraph 15, Ri Ky is entitled to the $46 it paid to Linn

Page 4 -    FIRST AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\022222\100MAI\MAIl20965207.1

1    County, Oregon, for recording the Lien, and the cost of the foreclosure guarantee already

2    incurred and is entitled to recover other costs incurred in prosecuting this claim.

3                                    23.

4        Pursuant to the Subcontract, paragraph 15, Ri Ky is entitled to its reasonable attorney

5    fees, costs, and disbursements.

6                                    24.

7        Pursuant to ORS 20.190, Ri Ky is also entitled to a prevailing party fee.

8                        **THIRD CLAIM FOR RELIEF**

9                            **(Quantum Meruit)**

10                                   25.

11       Ri Ky realleges and incorporates paragraph 1 through 16 and 18 through 24 above.

12                                   26.

13       The services described above were provided at the specific request of DTL and were

14   actually used for the benefit of WinCo and Ropp.

15                                   27.

16       The amount, type, and quantity of the services Ri Ky provided and used in the planning,

17   coordination, and construction of the property were reasonable.

18                                   28.

19       The charges for professional roofing and construction services totaling $131,119.18 are

20   reasonable.

21                                   29.

22       The sum of $131,119.18 remains unpaid. If Ri Ky is not paid the above amount, plus

23   interest at the rate of eighteen percent (18%) per annum from April 14, 2017 until paid,

24   Defendants WinCo and Ropp, and any other Defendant herein claiming ownership of the

25   Property will be unjustly enriched to Ri Ky's detriment.

26

Page 5 -    FIRST AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

1              30.

2          Pursuant to *Petersen v. Fielder*, 185 Or App 164 (2002), and ORS 20.096(1), Ri Ky is

3     entitled to its attorney fees as the prevailing party in this action.

4              31.

5          Pursuant to ORS 20.190, Ri Ky is also entitled to a prevailing party fee.

6                          **FOURTH CLAIM FOR RELIEF**

7          WHEREFORE, Ri Ky prays for judgment and decree as follows:

8          1.      With respect to Ri Ky's CLAIMS FOR RELIEF, a joint judgment and decree:

9                  a.      awarding Ri Ky monetary damages against defendants DTL, Ropp and

10    WinCo in the amount of $131,119.18 with interest thereon at the rate of eighteen percent

11    (18%) per annum from April 14, 2017 until paid, plus the cost of the title search and litigation

12    guaranty, and recording fees, and attorney fees, costs, and disbursements;

13                 b.      declaring the lien to be a first valid and subsisting construction lien against

14    the Property and Improvements, equal in priority to all other valid and perfected construction

15    liens and superior in right to the interest of all the defendants;

16                 c.      foreclosing the lien which has attached to the Property and improvements;

17    and

18    / / / / /

19    / / / / /

20    / / / / /

21    / / / / /

22    / / / / /

23    / / / / /

24    / / / / /

25    / / / / /

26

Page 6 -   FIRST AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

1          d.     awarding Ri Ky reasonable attorney fees, costs, and disbursements
incurred herein.

2          Dated this 13th day of June, 2017.

3

4                                              SCHWABE, WILLIAMSON & WYATT, P.C.

5

6                                        By:
                                               Darien S. Loiselle, OSB #925796
7                                              dloiselle@schwabe.com
                                               Facsimile: 503.796.2900
8                                              Of Attorneys for Ri Ky Roofing & Sheet
                                               Metal, LLC

9                                              Trial Attorney:  Darien S. Loiselle

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 7 -   FIRST AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\022222\100MAN\MAN20965207.1

1

# SUBCONTRACT AGREEMENT

THIS AGREEMENT, made and entered into by and between the CONTRACTOR:

**DTL BUILDERS, INC.  (DTL Builders)**                    **OR License #196063**

AND THE SUBCONTRACTOR:          **Ri-Ky Roofing & Sheet Metal, LLC.**
                                **14186 Fir Street, Unit 204**
                                **Oregon City, OR 97045**
                                OR License # _176541_
PHONE: (503) 477 - 4744              FAX: (503) 954 - 2806

PROJECT:   **WinCo #143**
           **3100 Pacific Blvd. SE**
           **Albany, OR 97321**

THE CONTRACTOR and SUBCONTRACTOR agree as follows:

## 1.    SCOPE OF WORK

1.1     SUBCONTRACTOR shall furnish all supervision, labor, materials, layout, tools and equipment (including safety equipment), necessary or required for the completion of the work as follows:

Roofing per Plans, Specifications, and Scope Exhibit B.

Submittals and shop drawings are due within 15 calendar days of issuance of this document.

Closeout and warranty documents are due within 15 calendar days of completion of the scope of work outlined in this document.

1.2     The supervisors supplied by the SUBCONTRACTOR will be approved by the CONTRACTOR and at the CONTRACTOR'S request, may be changed at any time to insure the quality and conduct of the supervisors, as required.

1.3     SUBCONTRACTOR'S workforce shall cooperate and work in harmony with all others working on site, including but not limited to employees of other Subcontractors, material suppliers, and the Owner or Tenants. If, in the reasonable judgment of CONTRACTOR, any of SUBCONTRACTOR'S workforces shall be determined to act in violation of any law, or create any disruption in the work, SUBCONTRACTOR agrees to remove and replace any member of the workforce at the CONTRACTOR'S direction. SUBCONTRACTOR shall not replace supervisors without the prior written approval of CONTRACTOR.

1.4     Any second and third shift work must be authorized and approved in advance in writing by CONTRACTOR'S Project Manager.

SUBCONTRACTOR INITIALS _____                    DTL BUILDERS INITIALS _____
                                                              Exhibit 1
                                                              Page 1 of 22

1.5    The work shall be performed in strict accordance with the drawings and specifications for said construction by Tait & Associates, Inc., 707 N. 27th St. Boise, ID 83702 as listed below:

Construction Documents: See Exhibit A

1.6    The SUBCONTRACTOR shall be bound and abide by all the contractual terms and conditions of the Prime Contract between Owner and CONTRACTOR, just as the CONTRACTOR is bound by the OWNER/TENANT under the Prime Contract for the Work which is the SUBCONTRACTOR'S responsibility, including without limitation, all General Conditions, Supplemental or Special Conditions, Addenda, Plans, and Specifications. The Prime Contract and all Contract Documents are available for review by the SUBCONTRACTOR upon request at the CONTRACTOR'S home office and any failure of the SUBCONTRACTOR to review and familiarize itself with said Prime Contract and Contract Documents shall not be deemed a waiver of this provision. In the event that any portion of the above mentioned contract documents contain any ambiguity with respect to either quantity or quality, SUBCONTRACTOR agrees to provide the highest quality and largest quantity in satisfying its required Work on the project. SUBCONTRACTOR agrees that it will include a paragraph identical to paragraph 1.7 in any Sub-Subcontract Agreements it enters into for this project.

1.7    By entering into the Subcontract Agreement, SUBCONTRACTOR represents to CONTRACTOR that it is financially sound, and can perform the subcontracted Work at the stated price and within the time frames scheduled by CONTRACTOR.

1.8    SUBCONTRACTOR agrees that an authorized representative from its company with authority to bind SUBCONTRACTOR will attend each of the CONTRACTOR'S weekly safety and project schedule meetings while SUBCONTRACTOR is performing its scope of work during the Project.

1.9    All preliminary and final drawings, specifications and other documents, whether in hard copy or electronic form, that are prepared by SUBCONTRACTOR or SUBCONTRACTOR'S CONSULATANTS under this Agreement ("Work Product") are deemed to be instruments of service and SUBCONTRACTOR hereby transfers and conveys to CONTRACTOR and OWNER or TENANT the ownership and property interest therein, including the copyrights thereto, subject to the terms and conditions of the Prime Contract requirements regarding Work Product.

2.    **PRICE AND PAYMENT**

2.1    The CONTRACTOR, for the full, complete and faithful performance of this Subcontract, agrees to pay the SUBCONTRACTOR **** TWO HUNDRED EIGHTY SIX THOUSAND FOUR HUNDRED EIGHTY SEVEN DOLLARS AND 0/100 **$286,487.00 *** in accordance with the following terms.

SUBCONTRACTOR INITIALS

3

2.2     SUBCONTRACTOR shall submit to the CONTRACTOR monthly Applications for Payment on or before the **20th day of each month** in an amount equal to **95%** of the value of material and labor incorporated into the Project by SUBCONTRACTOR to enable the CONTRACTOR to apply for payment therefore from the OWNER/TENANT. Applications for Payment for labor and materials shall be allocated in accord with the requirements of CONTRACTOR'S Project Manager. SUBCONTRACTOR shall provide a schedule of values satisfactory to CONTRACTOR upon execution of this Agreement and with each Application for Payment submitted hereunder.

2.3     Applications for Payment shall ONLY INCLUDE the base subcontract plus *fully executed* Change Orders issued to SUBCONTRACTOR by CONTRACTOR. Payment to the SUBCONTRACTOR will be made for work actually performed and completed, as may be measured and certified by CONTRACTOR or OWNER/TENANT, which shall be accepted by SUBCONTRACTOR as full compensation and embraced in the Subcontract Agreement.

2.4     Applications for Payment received by CONTRACTOR after **the 20th day** of each month will be included in the **following month's** billing to the OWNER/TENANT. In taking action on SUBCONTRACTOR'S Application for Payment, CONTRACTOR shall be entitled to rely on the accuracy and completeness of the information furnished by SUBCONTRACTOR.

2.5     Payment shall be due and payable to the SUBCONTRACTOR: 1) on or about the 30th. of the following month; or 2) within five (5) days after CONTRACTOR receives payment from the OWNER/TENANT; or 3) within five (5) days from the date SUBCONTRACTOR has provided CONTRACTOR complete sub-subcontractor and supplier waivers, joint check or other payment information CONTRACTOR requires to make payment, **THE LATEST OF WHICH TO OCCUR.**

2.6     If for any reason due to no fault of SUBCONTRACTOR, SUBCONTRACTOR does not receive payment from CONTRACTOR within five (5) days after the date of such payment is due, then SUBCONTRACTOR, upon giving an additional seven (7) days written notice to CONTRACTOR, and without prejudice to and in addition to any other legal remedies, may stop work until payment of the amount past due to SUBCONTRACTOR has been received. If SUBCONTRACTOR'S Work has been stopped for thirty (30) days because SUBCONTRACTOR has not received payment, SUBCONTRACTOR may terminate this Subcontract Agreement upon giving CONTRACTOR and additional seven (7) days written notice.

2.7     Payment may be made, at CONTRACTOR'S, option: 1) by US Mail; 2) by Overnight Delivery; 3) by hand delivery at the project site; or 4) exchanged through a title company. A representative of SUBCONTRACTOR authorized to execute waivers and endorse checks must be present to receive payment at the project site. If a title company is utilized, executed documents only need to be delivered to the title company to be held in trust pending exchange and release. This payment delivery procedure may be applied to either Progress Payments or Final Payment. In addition to any required CONDITIONAL PAYMENT WAIVERS, and upon SUBCONTRACTOR'S receipt of verifiable funds from CONTRACTOR, SUBCONTRACTOR agrees it will return any required forms of UNCONDITIONAL WAIVER within one business day in the format required under the Prime Contract documents. If no forms of waiver are specified in the Prime Contract, then in the format required by CONTRACTOR. SUBCONTRACTOR agrees it will impose similar requirements upon its suppliers and sub-subcontractors.

SUBCONTRACTOR INITIALS

DTL BUILDERS INITIALS

Exhibit 1
Page 3 of 22

4

2.8     Retainage equal to 5% of the total subcontract amount shall be held by CONTRACTOR until final project completion and release of final retainage to CONTRACTOR by OWNER/TENANT.

2.9     SUBCONTRACTOR agrees to receive any funds paid or advanced under this Agreement as a trust fund to be applied first to the payment of amounts owing to any person who has furnished materials or performed work for SUBCONTRACTOR for work hereunder before using any portions thereof for any other purpose. SUBCONTRACTOR shall not assign, pledge, factor or otherwise transfer any proceeds due under this Subcontract Agreement in whole or in part without prior written approval of CONTRACTOR, which shall not be unreasonably withheld.  No payment received by SUBCONTRACTOR shall be used to satisfy or secure any indebtedness other than one owed by SUBCONTRACTOR to a person furnishing labor, materials, equipment or other services for use in performing SUBCONTRACTOR'S Work.

2.10    CONTRACTOR shall have the right at all times to communicate with SUBCONTRACTOR'S sub-subcontractors, suppliers and laborers to insure that the same are being paid by SUBCONTRACTOR for labor, materials, equipment or other services furnished for use in performing the SUBCONTRACTOR'S Work.  In the event CONTRACTOR has reason to believe that labor, material, equipment or other obligations incurred in the performance of SUBCONTRACTOR'S Work are not being paid by SUBCONTRACTOR in a timely fashion, CONTRACTOR may take any steps it deems necessary, in its reasonable discretion, to ensure that any payments shall be utilized to pay such obligations including, but not limited to Joint or Direct Checks to SUBCONTRACTOR'S sub-subcontractors, suppliers and laborers. SUBCONTRACTOR hereby expressly consents to the terms of this section, and agrees to fully cooperate with CONTRACTOR to effectuate payment to third parties as required to maintain the project as lien and claim free, and on schedule.

2.11    SUBCONTRACTOR hereby agrees that CONTRACTOR has the right but not the obligation, to make any payment due to SUBCONTRACTOR hereunder, by Joint or Direct Check, to SUBCONTRACTOR, and its sub-subcontractors, suppliers or laborers which have performed Work or furnished materials under this Subcontract.  SUBCONTRACTOR may, at its option and sole cost: 1)  provide a Payment and Performance Bond covering its performance under this Subcontract Agreement upon receipt of which CONTRACTOR AGREES TO WAIVE ITS RIGHT TO MAKE PAYMENT by Joint or Direct Checks to SUCONTRACTOR'S sub-subcontractors, suppliers and laborers; or 2)  provide UNCONDITIONAL WIAVER OF LIENS AND CLAIMS stating that SUBCONTRACTOR has previously made payment to all of its sub-subcontractors, suppliers and laborers for all periods prior to AND INCLUDING the period for which payment is due to be made to SUBCONTRACTOR.  Any Joint Check or Direct Check made in payment for labor, materials or suppliers of SUBCONTRACTOR shall be deemed for payment accounting purposes as having been made solely for the benefit of SUBCONTRACTOR in accord with the terms of this Subcontract Agreement.

2.12    SUBCONTRACTOR hereby agrees that CONTRACTOR shall not be obligated to pay any amount to SUBCONTRACTOR if such payment would render the balance in the Contract Sum then due to SUBCONTRACTOR, to be less than the sum of (1) the Retainage, plus (2) the amount determined by CONTRACTOR in its reasonable discretion, for SUBCONTRACTOR to complete or correct all of its then remaining obligations for the Work.

SUBCONTRACTOR INITIALS

DTL BUILDERS INITIALS

Exhibit 1
Page 4 of 22

5

2.13   All claims for money due or to become due from CONTRACTOR arising out of this or any other transaction with SUBCONTRACTOR shall be subject to deduction or offset by CONTRACTOR in the event of SUBCONTRACTOR default or should CONTRACTOR deem itself insecure with respect to SUBCONTRACTOR'S performance under this Agreement, or any other agreement with CONTRACTOR.

3.    **SECURITY**

3.1    If requested by CONTRACTOR, at CONTRACTOR'S cost, SUBCONTRACTOR shall furnish a performance bond and a payment bond each in the amount of 100% of this Subcontract as security for SUBCONTRACTOR'S performance under this Agreement.

3.2    ~~In addition to or in lieu of the bonds described above and at CONTRACTOR'S sole discretion, SUBCONTRACTOR will furnish CONTRACTOR with information deemed necessary by CONTRACTOR to show that SUBCONTRACTOR is financially solvent. CONTRACTOR shall have the right, with SUBCONTRACTOR'S aid and cooperation, to inspect the books and financial records of SUBCONTRACTOR, including but not limited to federal and state income tax returns, bank statements and financial statements.~~

3.3    If during the course of performance of SUBCONTRACTOR'S Work, the CONTRACTOR shall, in its reasonable discretion, determine that it is insecure with respect to the further performance of SUBCONTRACTOR'S Work, or meeting its payment obligations, CONTRACTOR may require that SUBCONTRACTOR post or provide, at SUBCONTRACTOR'S sole expense, ~~such security as the CONTRACTOR deems necessary~~. Such additional security may include, but is not limited to, SUBCONTRACTOR furnishing: 1) an irrevocable letter of credit; or 2) a performance and payment bond; or ~~3) such other security CONTRACTOR may deem acceptable~~. Any failure of the SUBCONTRACTOR to provide such security shall be grounds for immediate suspension of SUBCONTRACTOR'S further performance, right to further payment, and shall subject SUBCONTRACTOR to being removed and replaced by a substitute Subcontractor for the completion of the Work, all at SUBCONTRACTOR'S sole cost and expense.

4.    **TIME OF COMPLETION**

4.1    The SUBCONTRACTOR agrees to promptly begin work as soon as notified by CONTRACTOR. SUBCONTRACTOR'S work shall commence as directed and be substantially completed per CONTRACTOR'S Master and/or Short Interval Job Schedule as modified periodically. SUBCONTRACTOR acknowledges receipt of the construction schedule and is aware of the fast-track nature of this project and agrees that it has included any and all required overtime, shift work and resources in its price to meet and achieve project schedule milestones. SUBCONTRACTOR further acknowledges that the construction schedule has concurrent activities to be conducted in association with other subcontractors and SUBCONTRACTOR acknowledges that it has duly considered, and included all necessary manpower and material requirements in its price in order to meet and achieve project schedule milestones in a timely manner. SUBCONTRACTOR agrees to maintain the progress of the work sufficiently in advance of the work of the CONTRACTOR or other subcontractors so as to avoid any delay in the completion of other portions of the Project or the Project as a whole.

6

4.2    SUBCONTRACTOR agrees to perform and complete all work to the full and complete satisfaction of the CONTRACTOR and/or OWNER/TENANT. *IN Accordance ; with section 1.1 in contract here.*

4.3    Any added manpower, equipment, materials, shift work, overtime or any other resources required to be supplied by SUBCONTRACTOR in order to meet the schedule shall NOT be subject to additional compensation, but rather shall be at the SUBCONTRACTOR'S sole cost and expense, within the Price and Payment provisions of this Subcontract Agreement.

4.4    Upon the CONTRACTOR'S written or electronic notice that the Project or any phase or activity may not be completed by its scheduled completion date (as such completion dates may be changed in accordance with the Agreement) due to SUBCONTRACTOR'S failure to perform, SUBCONTRACTOR shall:  1) submit a written recovery schedule to CONTRACTOR; and 2) take any or all the following actions, all without an increase in the subcontract amount:

> i.    Increase number of working hours per shift, shifts per working days, working days per week, or amount of construction equipment or any combination of foregoing which will bring the project activity back on schedule.
> ii.   Increase construction manpower in such quantity as will bring the Project or activity back on schedule, and/or
> iii.  Reschedule activities to achieve maximum practical concurrency of activities and bring the Project or activity back on schedule.

If SUBCONTRACTOR fails to take any of the actions indicated in Section 4 within forty-eight (48) hours after receiving the CONTRACTOR'S written or electronic notice, or such actions undertaken by SUBCONTRACTOR are, in ~~CONTRACTOR'S sole discretion~~, deemed insufficient, CONTRACTOR may take such further action as it deems advisable to attempt to return the Project or any activity back on schedule, including, but not limited to any or all of the following:  1) supplementing the SUBCONTRACTOR;  2) removing and replacing SUBCONRACTOR;  and 3) taking over SUBCONTRACTOR'S equipment and materials.  All monies expended by CONTRACTOR shall be deducted from the Subcontract price and if such expenditures exceed the amount otherwise due to the SUBCONTRACTOR hereunder, SUBCONTRACTOR agrees to pay to CONTRACTOR, on demand the full amount of such excess, or any expenses that may be incurred.

4.5    SUBCONTRACTOR shall reimburse CONTRACTOR for any loss, damage or extra expense paid or incurred by CONTRACTOR which is due to SUBCONTRACTOR'S failure to perform the Work, failure to deliver all materials as the times scheduled, or failure to properly perform any and all work in keeping with the progress of the general construction work, or failure to properly perform any term, covenant or condition contained in the Subcontract or <u>in the Prime Contract in any way associated with SUBCONTRACTOR'S scope of work.</u>

5.    ADDITIONS OR DELETION TO THE WORK

5.1    SUBCONTRACTOR agrees that CONTRACTOR, without invalidating the Subcontract Agreement, may order changes in the Work within the general scope of the Subcontract consisting of additions, deletions, or other revisions, the Subcontract Sum being adjusted accordingly.  SUBCONTRACTOR agrees is shall perform or delete work, in addition to or in reduction of that described herein, at direction of CONTRACTOR.  Said direction must be in writing in the form of either a Directive or Change Order signed by CONTRACTOR'S Project

SUBCONTRACTOR INITIALS 

7

Manager. For additions or deletions to the Work, and in order to be eligible for payment to SUBCONTRACTOR, said Directive or Change Order must be received prior to the actual performance of said work. SUBCONTRACTOR agrees that any additional work performed without a signed Directive or Change Order shall not be eligible for payment.

5.2      Depending on the circumstances, SUBCONTRACTOR will either be directed to; 1) immediately perform the work and submit pricing for review and approval at a later date, or 2) submit pricing for pre-approval before performing the work. Pricing for the additional work must include a complete description of work to be performed with a complete breakdown (quantity and rate) of the **ACTUAL COST** of labor, materials, equipment plus overhead/profit. Overhead/Profit rate shall not exceed the rates allowed in the Prime Contract, or 10% if no such rate is stated. In all cases, SUBCONTRACTOR shall not proceed with any additional work or changes in the work without advance, written approval from the CONTRACTOR and no obligation expressed or implied, is assumed by the CONTRACTOR regarding any such work without advance, written direction.

5.3      SUBCONTRACTOR agrees preliminary budget pricing for additional work must be submitted to CONTRACTOR no later than five (5) days after delivery of notification of proposed change(s). Final pricing, with complete material and labor unit breakdown, must be submitted to CONTRACTOR no later than seven (7) days after delivery of notification of proposed change(s). SUBCONTRACTOR acknowledges and agrees the failure to submit pricing information within the above time frames will result in the proposed change being incorporated into this scope of work at "no cost." All requests for payment under a Directive or Change Order must be submitted by SUBCONTRACTOR no later than thirty (30) days after completion of the work. SUBCONTRACTOR acknowledges and agrees that all payment requests for additional work submitted later than thirty (30) days after completion of the work shall not be eligible for payment by CONTRACTOR and/or OWNER/TENANT.

5.4      SUBCONTRACTOR agrees, upon request of CONTRACTOR, to supply all necessary records and information CONTRACTOR deems necessary to support submitted Change Orders and Directives, including but not limited to, payroll records, time cards, equipment invoicing and supplier costs.

6.      **LAWS, REGULATIONS, PERMITS, TAXES, ETC.** The work shall strictly comply with all federal, state, local, municipal, and any and all other governing laws, rules, regulations, statutes, ordinances and directives. All work, in addition to that specifically required by the Subcontract but necessary to fully comply with such Laws, will be furnished by SUBCONTRACTOR as part of this Subcontract without any additional compensation. The SUBCONTRACTOR shall pay all Federal and State Payroll Taxes, Sales and/or Use Taxes, Licenses and Permits upon the material and labor furnished under this contract, as required by the U.S. Government and State within which this work is performed. Exceptions to Sales and/or Use Taxes: States of Arizona, New Mexico, and Washington where CONTRACTOR will pay all applicable Sales and/or Use Taxes, South Dakota where CONTRACTOR will pay the 2% South Dakota Excise Tax, and the State of Washington, SUBCONTRACTOR is responsible to pay all applicable B&O Taxes, only as applies to SUBCONTRACTOR'S scope of work.

SUBCONTRACTOR INITIALS

DTL BUILDERS INITIALS
Exhibit 1
Page 7 of 22

## 7.    COMPLIANCE WITH IMMIGRATION LAWS

7.1    SUBCONTRACTOR warrants and affirmatively states that it shall comply with all federal, state, and local laws, ordinates, statutes, rules and regulations governing the employment of its workers, including, but not limited to, the Immigration Reform and Control Act of 1986, as amended, the Immigration and Nationality Act, as amended, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended (the "Immigration Laws"). SUBCONTRACTOR warrants and affirmatively states that it shall be bound to and will abide by all of the contractual terms and conditions of the Prime Contract between the OWNER/TENANT and CONTRACTOR governing the employment of its workers and compliance with the Immigration Laws, just as the CONTRACTOR is bound by the OWNER/TENANT.

7.2    SUBCONTRACTOR warrants and affirmatively states that should OWNER/TENANT or CONTRACTOR be named as a respondent or defendant in any administrative or judicial proceeding based upon an alleged violation of any federal, state or local law, regulation or ordinance arising out of the employment by SUBCONTRACTOR, or any of its sub-subcontractors or any other party providing labor or materials to the Project through agreement with the SUBCONTRACTOR, of individuals performing Work under the Contract Documents, SUBCONTRACTOR shall indemnify, defend and hold harmless OWNER/TENANT and CONTRACTOR from any and all liability.

## 8.    MATERIALS, TOOLS AND EQUIPMENT

8.1    SUBCONTRACTOR agrees to assume sole responsibility for the receipt, delivery, unloading, storage, warehousing, protection, insurance and all other risks of loss relating to any and all materials, tools and equipment it is to furnish, install, provide or have provided to it under this Subcontract. All items shall be stored in an area designated by CONTRACTOR'S Job Superintendent.

8.2    SUBCONTRACTOR agrees that it shall account for all materials received or furnished by the OWNER/TENANT for installation in the Work. In the event that any such materials are either damaged, unaccounted for, missing, lost, destroyed, or mishandled, then SUBCONTRACTOR shall be charged for all costs for replacement of all such materials.

## 9.    SAFETY AND ACCIDENT PREVENTION

9.1    SUBCONTRACTOR understands that the structural design of the Project is based on all parts of the Work having been completed. Therefore, SUBCONTRACTOR shall execute the Work such that all parts of Work are adequately braced during construction to resist wind, snow and other loads. SUBCONTRACTOR shall be responsible for all temporary construction equipment, including, but not limited to, scaffolding, staging, lifting and hoisting devices, shoring, excavation, barricades, and safety and construction procedures, necessary for the safe completion of the Project. Such equipment and procedures shall comply with all applicable codes and regulations. CONTRACTOR is not responsible to determine if SUBCONTRACTOR, sub-subcontractors or the employees or agents of any of them are in compliance with such regulations.

SUBCONTRACTOR INITIAL

DTL BUILDERS INITIALS _____

Exhibit 1
Page 8 of 22

9

9.2    SUBCONTRACTOR shall comply with all Federal Occupational Safety and Health Administration Hazard Communications Act ("HAZCOM") requirements, including properly maintaining Material Safety Data Sheets ("MSDS") at the Project site, and all Federal and/or State Occupational Safety and Health Administration (OSHA) requirements. SUBCONTRACTOR shall ensure that all MSDS and safety program materials related to their work are compiled in a single location at the Project site and are available to the regulating agencies.

9.3    SUBCONTRACTOR shall indemnify and hold harmless the OWNER/TENANT, CONTRACTOR and ARCHITECT for their respective failure to comply with this provision. SUBCONTRACTOR shall be responsible for any fines, penalties, or charges by any regulatory body by reason of any violation of safety regulations. SUBCONTRACTOR shall further be responsible for reimbursement of any OSHA fines incurred by CONTRACTOR, OWNER/TENTANT or ARCHITECT for Project site safety conditions created or controlled by SUBCONTRACTOR, that result in CONTRACTOR, OWNER/TENANT or ARCHITECT receiving a citation under the OSHA multi-employer citation provision.

9.4    SUBCONTRACTOR shall notify CONTRACTOR'S personnel, upon arrival to the Project site, and at any time while working on site, of any known or discovered safety hazards at the Project, and the precautions such personnel should take to avoid the hazards. SUBCONTRACTOR shall comply with all Federal, State and OSHA guidelines at all times. Necessary safety equipment as pertains to each trade is required at all times. All subcontractors and suppliers are to furnish their employees with the necessary training and equipment for protection. Damaged or defective personal protective equipment (PPE) shall not be used. CONTRACTOR is not responsible for the training of SUBCONTRACTOR'S employees to meet applicable safety requirements.

9.5    SUBCONTRACTOR will provide, erect and maintain necessary safety precautions for the protection of its work and for the safety of its employees, other subcontractors and the public exposed to hazard or danger created by its work. SUBCONTRACTOR agrees to cooperate with CONTRACTOR in efforts to prevent injuries to workers employed by either party in carrying on operations covered by this Subcontract.

9.6    SUBCONTRACTOR agrees to indemnify and hold CONTRACTOR and OWNER/TENANT harmless for and from any loss, claim, suit, damage or liability from injury or death of any person, including employees of SUBCONTRACTOR, as a result of SUBCONTRACTOR'S or employees of SUBCONTRACTOR'S work or negligence, regardless of whether there is concurrent negligence on the part of CONTRACTOR or OWNER/TENANT. SUBCONTRACTOR does not assume liability for the sole negligence of CONTRACTOR or OWNER/TENANT.

9.7    Consumption of alcoholic beverages and/or use of illegal drugs or controlled substances anywhere on the Project are absolutely prohibited at all times.

SUBCONTRACTOR INITIALS 

10

10.    **STORM WATER POLLUTION PREVENTION.** SUBCONTRACTOR understands that the Project is subject to the provisions and control of the Clean Water Act (the "Act") and the Environmental Protection Agency (the "EPA") and that the Project has an EPA approved Storm Water Pollution Prevention Plan (the "Plan") in place an in effect at all times for the duration of the Project. SUBCONTRACTOR shall comply with all provisions of the Plan and the Act, and shall execute the Work so the Work is carried out in compliance with the Plan and the Act. CONTRACTOR is not responsible to determine that SUBCONTRACTOR, its sub-subcontractors, employees, or agents of any of them are in compliance with the Plan and the Act. SUBCONTRACTOR shall indemnify and hold harmless CONTRACTOR, OWNER/TENANT, and ARCHTECT for SUBCONTRACTOR, its sub-subcontractors, employees or agents for any of their respective failure to comply with the Plan, or Act or this contract provision. SUBCONTRACTOR shall be responsible for any fines, penalties, or charges it incurs as a result of any violation of the Plan or the Act. SUBCONTRACTOR shall also be responsible for reimbursement of any fines or penalties incurred by the CONTRACTOR, OWNER/TENANT or ARCHITECT as a result of any violation of the Plan or the Act by SUBCONTRACTOR, its sub-subcontractors, employees, or agents of any of them. SUBCONTRACTOR shall immediately notify CONTRACTOR'S Job Superintendent of Project Manager at any time that it becomes aware of any violation of the Plan or the Act.

11.    **CONTRACTOR'S EQUIPMENT.** CONTRACTOR'S tools equipment and project office are for the use of the CONTRACTOR only. The project phone and/or fax can be used only after receiving special permission from the CONTRACTOR'S Job Superintendent.

12.    CLEAN-UP, SIGNAGE AND PROTECTION

12.1    SUBCONTRACTOR shall continuously maintain the Project free from all dirt, rubbish, debris and other waste materials caused by its operations. SUBCONTRACTOR shall remove from the premises all rubbish, stains and blemishes caused by its operations, and it shall perform, at no additional cost, whatever additional clean-up of SUBCONTRACTOR'S work as directed by CONTRACTOR.

12.2    SUBCONTRACTOR shall not place any signage at the Project site without the express written approval of CONTRACTOR.

12.3    SUBCONTRACTOR shall be responsible for any costs incurred by CONTRACTOR or others to correct SUBCONTRACTOR'S defective or deficient Work, or to repair damage to other trades' Work caused by SUBCONTRACTOR.

SUBCONTRACTOR INITIALS 

### 13.    SUB-SUBCONTRACTORS AND SUPPLIERS

13.1    SUBCONTRACTOR shall not sublet any portion of the work under this Subcontract without the written consent of CONTRACTOR. Should such consent be granted, SUBCONTRACTOR is solely responsible for supervision of, training of and communication with, its sub-subcontractors and suppliers. SUBCONTRACTOR shall submit to CONTRACTOR a complete written list of all approved sub-subcontractors and suppliers at the time of execution of this Subcontract. Further, SUBCONTRACTOR must provide a complete and current list of all approved sub-subcontractors and suppliers to CONTRACTOR with each Application for Payment or if any changes occur. Failure to provide this list is an event of default under this Subcontract, which if cured will, at a minimum, result in payments being held until complete information is received and verified by CONTRACTOR.

13.2    SUBCONTRACTOR shall pay, in full, all sub-subcontractors, suppliers and laborers and obtain valid and enforceable lien and claim releases from all such parties for all periods for which payment has been made to SUBCONTRACTOR. In the event said parties file any claim or lien against the Project for Work completed or for materials or equipment supplied, then, upon CONTRACTOR'S demand, SUBCONTRACTOR shall pay any lien claimant or any claimant to release and settle said claims or liens, or take such action as may be deemed necessary by CONTRACTOR to remove all claims or liens and to indemnify CONTRACTOR and OWNER/TENANT from all such claims or liens. If SUBCONTRACTOR fails to take such action, CONTRACTOR may, at its option pay the claimants to release said claims or liens. All monies expended by CONTRACTOR shall be deducted from the Subcontract price and if such expenditures exceed the amount otherwise due to the SUBCONTRACTOR hereunder SUBCONTRACTOR agrees to pay CONTRACTOR, on demand, the full amount of such excess, or any expenses that may be incurred.

### 14.    INSURANCE AND INDEMNIFICATION

14.1    CONTRACTOR shall not be liable for any loss or casualty incurred or caused by SUBCONTRACTOR or SUBONTRACTOR'S employees or agents. SUBCONTRACTOR shall maintain full and complete insurance on all materials supplied by SUBCONTRACTOR until the materials are permanently installed and become part of the completed work, and SUBCONTRACTOR assumes all risk of loss for all materials stored on site prior to permanent installation regardless of whether SUBCONTRACTOR had previously been paid for the same.

14.2    SUBCONTRACTOR shall obtain, before commencement of the Work hereunder, and maintain until final completion of the Prime Contract, full insurance coverage as may be specified in the Prime Contract, or elsewhere in the Subcontract, and in amounts not less than those specified. All insurance shall be procured at SUBCONTRACTOR'S expense and shall have CONTRACTOR and OWNER/TENANT listed as additional insured on primary and non-contributory basis using ISO Additional Insured Endorsement CG 2010 (11/85) or CG 2010 (10/93) AND CG 2037 or CG 2033 AND CG 2037 or an endorsement providing equivalent coverage to the additional insured's. This insurance for the additional insured's shall be as broad as the coverage provided for the named insured SUBCONTRACTOR.

SUBCONTRACTOR INITIALS 

DTL BUILDERS INITIALS
Exhibit 1
Page 11 of 22

12

14.3   SUBCONTRACTOR shall file certificates of insurance with CONTRACTOR at least one (1) day prior to scheduled commencement of the Work. In no event shall SUBCONTRACTOR maintain less than the following insurance coverages: (a) Workers Compensation covering all SUBCONTRACTOR'S employees engaging in the performance of this Subcontract, in the amount required by law;  (b) Comprehensive Commercial General Liability Insurance including CONTRACTOR'S Protective Liability and Contractual Liability Insurance with the following minimum limits: $2,000,000 products/completed operations aggregate for a minimum of three (3) years, $2,000,000 general aggregate, $1,000,000 any one occurrence;  (c) Automobile Liability (comprehensive coverage) of $1,000,000 each accident;  (d) Employer's Liability Insurance, subject to a waiver of subrogation in favor of OWNER/TENANT and CONTRACTOR, with policy limits of not less than $1,000,000 each accident, $1,000,000 disease each employee and $1,000,000 disease policy limit;  (e) other insurance as may be required by law, the Prime Contract, or CONTRACTOR.

14.4   No policy of insurance so provided my permit cancellation without thirty (30) days prior written notice of cancellation to CONTRACTOR.  Failure of SUBCONTRACTOR to maintain complete insurance may be deemed a material breach allowing CONTRACTOR to either terminate this Subcontract or to procure such insurance at SUBCONTRACTOR'S sole expense.

14.5   SUBCONTRACTOR waives all rights against CONTRACTOR and OWNER and their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by commercial general liability, commercial umbrella liability, business auto liability or workers compensation and employers liability insurance maintained per the requirements stated above.

14.6   To the fullest extent permitted by law, SUBCONTRACTOR hereby agrees to defend, hold the OWNER/TENANT and CONTRACTOR harmless from, and indemnify the OWNER/TENANT and CONTRACTOR against any and all liabilities, costs, damages of any kind, attorney fees, and expenses from any claims or causes of action arising out of or relating to SUBCONTRACTOR'S performance of this Subcontract, whether or not it is alleged that CONTRACTOR or OWNER/TENANT in any way contributed to the alleged wrongdoing or is liable due to a non-delegable duty, including: (a) claims, including personal injury and death, relating to its subcontractors, suppliers or employees, and (b) claims or disputes of any person or entity for damages from any cause directly or indirectly relating to any action or failure to act by SUBCONTRACTOR, its representative, employees, subcontractors or suppliers.

15.   **ATTORNEY FEES.**  In the event of any controversy, claim or action being filed or instituted between the parties to this Agreement to enforce the terms of this Agreement or arising from the breach of any provision hereof, the prevailing party will be entitled to receive from the other party all reasonable costs, damages, expenses and attorney's fees, incurred by the prevailing party, whether or not such a controversy or claim is litigated or prosecuted to judgment.  The prevailing party including, but not limited to expert witness fees, consultant fees, deposition costs, and any and all such costs and attorney fees incurred in, or relating to, any mediation, arbitration, trial court action, or bankruptcy court action, will be that party who recovers at least 75% of the total amount claimed by the party in the action, or who is required to pay no more than 25% of the total amount claimed by the other party in the action.

SUBCONTRACTOR INITIALS ___   DTL BUILDERS INITIALS ___

Exhibit 1
Page 12 of 22

13

16.    **GUARANTEE.** SUBCONTRACTOR agrees to guarantee and warranty its work against all defect of materials or workmanship, as called for in the Prime Contract, or in no guarantee or warranty is called for, then for the later of:  1) the minimum time period as may be prescribed by local statute, law or regulation or 2) a period of one (1) year from the date of completion of the Prime Contract and final acceptance by OWNER/TENANT of the Work performed hereunder. SUBCONTRACTOR shall remove, replace and/or repair at its own expense and at the convenience of OWNER/TENANT any workmanship, materials and equipment furnished hereunder with respect to which any defect shall appear, and any equipment furnished hereunder which shall fail to develop ratings, capacities or characteristics required by the Subcontract and/or the Prime Contract.  Such obligation of SUBCONTRACTOR shall be in addition to all other obligations imposed by law or this Subcontract.  CONTRACTOR may demand assurance, by bond or otherwise, from SUBCONTRACTOR that it will abide by its guarantee and warranty as specified herein and as might otherwise be specified to a greater extent in the Prime Contract.

17.    SPECIAL CONSTRUCTION CONDITIONS.  As customarily applies to the trade and Scope of Work; a.  **Excavation and Compaction** – Unless it is expressly stated otherwise, it is the responsibility of the SUBCONTRACTOR to provide all excavation necessary to its phase of work.  SUBCONTRACTOR shall be required to backfill its excavations with compatible material and mechanical compaction in 8" maximum lifts to achieve 95% compaction using a modified proctor.  It is also the SUBCONTRACTOR'S responsibility to locate and protect existing utilities and other subcontractor's work.  b.  **Roof and Wall Penetrations** – When it is necessary for SUBCONTRACTOR to penetrate a roof or wall with its installation, a drawing detailing such a penetration, including weather sealing, must be submitted and approved by the CONTRACTOR'S Project Manager prior to installation.  c.  **Equipment Mounting** – When it is necessary for SUBCONTRACTOR to mount any equipment that would utilize the building structure for support, a drawing detailing mounting and equipment net weights must be submitted and approved by the CONTRACTOR'S Project Manager prior to installation.  **d. As-Built Drawings** – Four (4) complete original red-line As-Built drawings will be required in CONTRACTOR'S office prior to submittal of SUBCONTRACTOR'S Request for Retainage.  **e. Weather Conditions** – The SUBCONTRACTOR is aware the current construction schedule may be during adverse weather and has agreed that all costs and resources associated with preparation, installation and protection of their work is solely the SUBCONTRACTOR'S responsibility. *IF DAMAGE BY OTHER SUBS OR CONTRACTOR OCCURS REPAIRS WILL BE DONE ON A TIME & MATERIAL BASIS. TIME = $69ᵉᵉ PER MAN PER HOUR + MATERIALS PLUS 20% FOR 10%*

18.    **COUNTERPARTS.**  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.

19.    **NOTICE.**  Any notice required under the provision of this Agreement may be delivered via US Mail, overnight delivery, telefax, e-mail or hand delivery to the last known address of CONTRACTOR or SUBCONTRACTOR.

20.    **AMENDMENTS AND WAIVERS.**  No amendment or waiver of any provision of this Agreement shall be valid unless the same shall be in writing and signed by CONTRACTOR and SUBCONTRACTOR.

**SUBCONTRACTOR INITIALS**

**DTL BUILDERS INITIALS**

Exhibit 1
Page 13 of 22

14

21. **CONSTRUCTION.** The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this
Agreement. Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. The word "including" shall mean including without limitation. The Parties intend that each representation, warranty, and covenant contained herein shall have independent significance. If any party has breached any representation, warranty, or covenant contained herein in any respect, the fact that there exists another representation, warranty, or covenant relating to the same subject matter (regardless of the relative levels of specificity) which the Party has not breached shall not detract from or mitigate eh fact that the Party is in breach of the first representation, warranty or covenant.

22. **DELAYS, CLAIMS AND DISPUTE RESOLUTION**

22.1    The definition and determination whether SUBCONTRACTOR has been delayed in the progress of its Work shall be determined under the provisions of the Prime Contract documents. If the Prime Contract documents do not contain provisions with regard to delay, the following standards shall govern.

22.2    If the SUBCONTRACTOR is delayed in the progress of the Work for five (5) calendar days or less in the aggregate by reason of any events or causes beyond the control of OWNER/TENANT, CONTRCTOR or SUBCONTRACTOR ("Force Majure Delays"), such delays shall not be the basis for an increase in the Contract Sum and the SUBCONTRACTOR'S sole remedy shall be an extension of the SUBCONTRACTOR'S time for performance which fairly reflects any critical path delay in substantially completing the Work. If the SUBCONTRACTOR is delayed in the progress of the Work for more than five (5) calendar days in the aggregate by reason of any Force Majure Delays, SUBCONTRACTOR'S sole compensations shall be limited to the actual additional direct costs of General Conditions and/or remobilization caused by such delays in excess of the five (5) calendar days. The SUBCONTRACTOR shall also be entitled to an extension of time for performance of the Work which fairly reflects any critical path delay in completing the Work. The    SUBCONTRACTOR agrees that adjustments in the Contract Time will be permitted only to the extent such delay (i) is not caused or could have been anticipate by the SUBCONTRACTOR, and (ii) could not have been limited or avoided by the SUBCONTRACTGOR'S timely notice to the CONTRACTOR.

22.3    If the SUBCONTRACTOR is delayed in the progress of the Work by an act or omission of CONTRACTOR or OWNER/TENANT, the SUBCONTRACTOR'S sole remedy shall be: 1) an extension of time which fairly reflects any critical path delay in substantially completing the Work, and 2) and adjustment in the Contract Sum to cover the actual additional direct costs (including General Conditions) resulting from the delay caused by such act or omission. In no event shall the SUBCONTRACTOR be entitled to any damages in connection with the delay, including without limitation, consequential damages, lost opportunity costs, impact damages or similar remuneration.

SUBCONTRACTOR INITIALS ____

DTL BUILDERS INITIALS ____

Exhibit 1
Page 14 of 22

15

22.4    Resolution of all claims and disputes between CONTRACTOR and SUBCONTRACTOR shall be determined under the provision of the Prime Contract documents. If the Prime Contract documents do not contain provision with regard to claims and dispute resolution, the following standards shall govern.

22.5    A Claim is a demand or assertion by one of the Parties seeking, as a matter of right, adjustment or interpretation of the Contract terms, payment of money, extension of time, or other relief with respect to the terms of the Contract documents. Claims must be initiated by written notice to the other Party. The responsibility to substantiate the Claims shall rest with the Party making the Claim.

22.6    Claims by either Party must be initiated within twenty one (21) days after occurrence of the event giving rise to the Claim. Failure to deliver the notice within the time set forth herein shall result in a complete and final waiver of the Claim and all rights and remedies arising therefrom.

22.7    The Parties shall attempt to resolve any Claim in an amicable matter through direct negotiation. If direct negotiation fails to resolve a Claim the parties shall endeavor to resolve their Claims by mediation which, unless the Parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect at the time of the mediation. Mediation shall be a precondition to the commencement of any legal proceedings. The Parties shall share the mediator's fee equally. If mediation unsuccessful, Claims shall be decided by court litigation.

22.8    SUBCONTRACTOR shall not be excused from performance of any obligation hereunder by reason of any claims or disputes it may have with CONTRACTOR, other contractors, subcontractors, with its employees, any union, or with any employees of the OWNER/ TENANT.

23.    **JURISDICTION.** The Parties to this Agreement agree to jurisdiction over any proceeding concerning this Agreement, including without limitation the breach of any term or condition of the Agreement, the nonperformance of any term or condition of this Agreement, and/or collection of any amounts due under this Agreement, at a venue where the project is located.

24.    **CHOICE OF LAW.** The law of the State of ~~Utah~~ *Oregon* shall govern the interpretation of this ⓨ contract and any disputes that arise as a result of the parties' relationship, whether sound in contract or tort.

25.    **ENTIRE AGREEMENT.** This Subcontract Agreement is solely for the benefit of the Parties hereto and represents the entire and Integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral. This Agreement shall not be modifiable, or modified in any fashion except and expressly by a written agreement executed by the parties hereto.

SUBCONTRACTOR INITIALS

DTL BUILDERS INITIALS

Exhibit 1
Page 15 of 22

16

26.   **INCONSISTENCIES AND OMISSIONS.** Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of the SUBCONTRACTOR to so notify the CONTRACTOR in writing within three (3) working days of the SUBCONTRACTOR'S discovery thereof. Upon receipt of said notice the CONTRACTOR shall instruct the SUBCONTRACTOR as to the measures to be taken and the SUBCONTRACTOR shall comply with the CONTRACTOR'S instructions. Any failure of the SUBCONTRACTOR to comply with this provision shall render any claim by the SUBCONTRACTOR for damages or time extensions for contractual performance, null and void.

27.   **SEVERABILITY AND WAIVER.** The partial or complete invalidity of any one or more provision of this Subcontract Agreement shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Subcontract Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant or right as respect further performance, nor shall the same relieve the SUBCONTRACTOR of full and complete performance of the Work of this Subcontract Agreement on the Project.

IN WINESS WHEREOF, the CONTRACTOR and SUBCONTRACTOR have executed this Agreement this **23rd** of **AUGUST, 2016**.

CONTRACTOR:

DTL BUILDERS, INC.

By: _____

Printed: _____

Title: _____

SUBCONTRACTOR:
ON BEHALF OF
RI-KY ROOFING & SHEET METAL, LLC.

By: _____

Printed: _TARA KRAMER_

Title: _MEMBER_

SUBCONTRACTOR INITIALS _____

DTL BUILDERS INITIALS _____

Exhibit 1
Page 16 of 22

17

# EXHIBIT A - CONSTRUCTION DOCUMENTS

DATE

8/11/2016

| Sheet | Title | Date | Revision |
|---|---|---|---|
| C1 | Cover Sheet | 07/18/16 | |
| SD1 | Partial Site Plan & Details | 07/18/16 | |
| SD2 | Architectural Site Plan & Details | 07/18/16 | |
| SD3 | Site Electrical Plan | 07/18/16 | |
| SD4 | Site Photometric Plan | 07/18/16 | |
| FP1 | Fixture/Equipment Coordination Plan | 07/18/16 | |
| FP2 | Platforms & Enlarged Fixture/Equipment Coordination Plans | 07/18/16 | |
| FP3 | Details | 07/18/16 | |
| FP4 | Merchandising Plan | 07/18/16 | |
| SE1 | Sanitary Equipment Plan | 07/18/16 | |
| PC1 | Pest Control Plan | 07/18/16 | |
| S0 | General Structural Notes | 07/18/16 | |
| S0.1 | Speical Inspection | 07/18/16 | |
| S1 | Foundation Plan | 07/18/16 | |
| S1.1 | Foundation Details | 07/18/16 | |
| S1.2 | Foundation Details | 07/18/16 | |
| S2 | Platform Framing and Partition Wall Bracing | 07/18/16 | |
| S2.1 | Platform Framing Details | 07/18/16 | |
| S2.2 | Partition Wall Bracing Details | 07/18/16 | |
| S3 | Roof Framing Plan | 07/18/16 | |
| S3.1 | Fire Sprinkler Loading Plan | 07/18/16 | |
| S3.2 | Roof Framing Details | 07/18/16 | |
| S3.3 | Roof Framing Details | 07/18/16 | |
| S3.4 | Support Details | 07/18/16 | |
| S4 | Canopy Framing and Covered Deck Framing Plans | 07/18/16 | |
| S4.1 | Canopy Framing Sections | 07/18/16 | |
| S4.2 | Cart Storage & Canopy Sections | 07/18/16 | |
| A1 | Slab Plan | 07/18/16 | |
| A1.1 | Slab Details | 07/18/16 | |
| A1.2 | Slab Details | 07/18/16 | |
| A1.3 | Slab Control Joint Plan | 07/18/16 | |
| A1.4 | Enlarged Slab Penetration Plan | 07/18/16 | |
| A1.5 | Enlarged Slab Penetration Plan | 07/18/16 | |
| A1.6 | Enlarged Slab Penetration Plan | 07/18/16 | |
| A1.7 | Enlarged Slab Penetration Plan | 07/18/16 | |

SUBCONTRACTOR INITIALS

DTL BUILDERS INITIALS _____

Exhibit 1
Page 17 of 22

18

# EXHIBIT A - CONSTRUCTION DOCUMENTS

DATE

8/11/2016

| Sheet | Title | Date | Revision |
|---|---|---|---|
| A2 | Floor Plan | 07/18/16 | |
| A2.1 | Platform Plans & Enlarged Partial Floor Plans | 07/18/16 | |
| A3 | Details | 07/18/16 | |
| A3.1 | Details | 07/18/16 | |
| A3.2 | Details | 07/18/16 | |
| A3.3 | Details | 07/18/16 | |
| A4 | Exterior Elevations | 07/18/16 | |
| A4.1 | Canopy Details | 07/18/16 | |
| A5 | Building Sections | 07/18/16 | |
| A6 | Wall Sections | 07/18/16 | |
| A6.1 | Wall Sections | 07/18/16 | |
| A6.2 | Wall Sections | 07/18/16 | |
| A7 | Roof Plan | 07/18/16 | |
| A7.1 | Roof Details | 07/18/16 | |
| A7/2 | Roof Details | 07/18/16 | |
| A8 | Reflected Ceiling Plan | 07/18/16 | |
| A8.1 | Platform Reflected Ceiling Plants & Details | 07/18/16 | |
| A9 | Floor Finish Plan | 07/18/16 | |
| A9.1 | Platform Floor Finish Plans & Details | 07/18/16 | |
| A10 | Interior Elevations | 07/18/16 | |
| A11 | Wall Finish Schedule & Details | 07/18/16 | |
| A12 | Door Schedule, Window Types & Details | 07/18/16 | |
| A12.1 | Door & Window Details | 07/18/16 | |
| A13 | Misc. Fixturing Keyed Plan | 07/18/16 | |
| A14 | Enlarged Plans & Details | 07/18/16 | |
| A15 | Enlarged Plans & Details | 07/18/16 | |
| A16 | Details | 07/18/16 | |
| A17 | Details | 07/18/16 | |
| A18 | Sign Supports & Closure Panel Plan & Details | 07/18/16 | |
| A19 | Details | 07/18/16 | |
| A20 | Pallet Racks Installation Plan, Schedules & Notes | 07/18/16 | |
| A20.1 | Pallet Rack Details | 07/18/16 | |
| A21 | Gondola & Wide Span Installation Plan Schedule & Notes | 07/18/16 | |
| A22 | Owner Furnished Fixtures & Equipment Schedule | 07/18/16 | |
| A22.1 | Contractor Furnished Fixtures & Equipment & Store Total Schedules | 07/18/16 | |

SUBCONTRACTOR INITIALS

DTL BUILDERS INITIALS

Exhibit 1
Page 18 of 22

19

# EXHIBIT A - CONSTRUCTION DOCUMENTS

DATE

8/11/2016

| Sheet | Title | Date | Revision |
|---|---|---|---|
| A23 | Signage Plan & Details | 07/18/16 | |
| A24 | Misc.s Schedules | 07/18/16 | |
| A25 | Bulk Foods | 07/18/16 | |
| A26 | Bulk Foods | 07/18/16 | |
| A27 | Bulk Foods | 07/18/16 | |
| A28 | Bulk Foods | 07/18/16 | |
| P1 | Plumbing Waste & Vent Plan | 07/18/16 | |
| P2 | Domestic Water & Gas Plan | 07/18/16 | |
| P3 | Mechanical Platform Piping Plan & Calcs | 07/18/16 | |
| P3.1 | Enlarged Waste & Vent Plan & Elevations | 07/18/16 | |
| P4 | Plumbing Schedules & Legend | 07/18/16 | |
| P4.1 | Riser Diagrams | 07/18/16 | |
| P5 | Plumbing Details | 07/18/16 | |
| P6 | Domestic Piping Material Specifications | 07/18/16 | |
| P7 | Domestic Water & Gas Shut-Off Valve Plan | 07/18/16 | |
| M1 | Mechanical Plan | 07/18/16 | |
| M1.1 | Mechanical Plan Enlarged | 07/18/16 | |
| M2 | Mechanical Platform Plan & Details | 07/18/16 | |
| M2.1 | Mehcanical Details | 07/18/16 | |
| M3 | Mechancial Schedules & Legend | 07/18/16 | |
| M3.1 | Mechanical Schedules | 07/18/16 | |
| M3.2 | Energy Compliance | 07/18/16 | |
| E1 | Electrical Cover Sheet | 07/18/16 | |
| E2 | HVAC & Refrigeration Electrical Plan | 07/18/16 | |
| E2.1 | Platform HVAC Electrical Plan & Details | 07/18/16 | |
| E3 | Lighting Plan | 07/18/16 | |
| E3.1 | Platform Lighting Plan, Details & Fixture Schedule | 07/18/16 | |
| E3.2 | Lighting Compliance Forms | 07/18/16 | |
| E4 | Power Plan | 07/18/16 | |
| E4.1 | Enlarged Power Plans | 07/18/16 | |
| E4.2 | Enlarged Power Plans & Details | 07/18/16 | |
| E5 | Special Systems Plan | 07/18/16 | |
| E5.1 | Platform Special System Plan & Details | 07/18/16 | |
| E5.2 | CCTV & Card Access Plan | 07/18/16 | |
| E5.3 | CCTV & Card Access Schedules & Details | 07/18/16 | |

SUBCONTRACTOR INITIALS

DTL BUILDERS INITIALS _____

Exhibit 1
Page 19 of 22

20

# EXHIBIT A - CONSTRUCTION DOCUMENTS
### DATE
### 8/11/2016

| Sheet | Title | Date | Revision |
|---|---|---|---|
| E6 | One-line Diagram | 07/18/16 | |
| E7 | Panel Schedules | 07/18/16 | |
| PA1 | Paging System Plan | 07/18/16 | |
| PA2 | Paging System Details | 07/18/16 | |
| R1 | Refrigeration Plan | 07/18/16 | |
| R2 | Refrigerant Piping Plan | 07/18/16 | |
| R3 | Details & Enlarged Platform Plans | 07/18/16 | |
| R3.1 | Refrigeration & Electrical Details | 07/18/16 | |
| R3.2 | Case Details | 07/18/16 | |
| R4 | Refrigeration Schedule | 07/18/16 | |
| R5 | Control IO Points | 07/18/16 | |
| F1 | Fire Alarm Plan | 07/18/16 | |
| F1.1 | Fire Alarm Schedules & Details | 07/18/16 | |
| F2 | Fire Sprinkler Plan | 07/18/16 | |
| F2.1 | Fire Sprinkler Schedules & Details | 07/18/16 | |
| BMS1 | BMS Plan | 07/18/16 | |
| BMS2 | BMS Details & Enlarged Platform Plan | 07/18/16 | |
| BMS3 | BMS Overview | 07/18/16 | |
| BMS4 | Network Cabling Plan | 07/18/16 | |
| OCS-1.00 | Cover Sheet | 07/18/16 | |
| OCS-1.01 | General Notes | 07/18/16 | |
| C1.00 | Erosion Control Plan | 07/18/16 | |
| C1.01 | Erosion Control Notes | 07/18/16 | |
| C1.02 | Erosion Control Notes & Details | 07/18/16 | |
| C2.00 | Alta Survey Topography | 07/18/16 | |
| C2.01 | Alta Survey Boundary | 07/18/16 | |
| C2.02 | Alta Survey Exceptions & Certifications | 07/18/16 | |
| C3.00 | Demolition Plan | 07/18/16 | |
| C4.00 | Site Plan | 07/18/16 | |
| C4.01 | Fire Lane & Site Access Plan | 07/18/16 | |
| C5.00 | Partial Horizontal Control Plan | 07/18/16 | |
| C5.01 | Partial Horizontal Control Plan | 07/18/16 | |
| C6.00 | Paving Plan | 07/18/16 | |
| C6.01 | Paving and Site Details | 07/18/16 | |
| C6.02 | Paving and Site Details | 07/18/16 | |

SUBCONTRACTOR INITIALS

DTL BUILDERS INITIALS

Exhibit 1
Page 20 of 22

21

# EXHIBIT A - CONSTRUCTION DOCUMENTS
DATE
8/11/2016

| Sheet | Title | Date | Revision |
|-------|-------|------|----------|
| C7.00 | Overall Grading Plan | 07/18/16 | |
| C7.01 | Partial Grading Plan | 07/18/16 | |
| C7.02 | Partial Grading Plan | 07/18/16 | |
| C7.03 | Driveway & Ramp Details | 07/18/16 | |
| C8.00 | Approach Demolition and TESC Plan | 07/18/16 | |
| C8.01 | Erosion Control Nottes & Details | 07/18/16 | |
| C8.02 | Approach Horizontal Control Plan | 07/18/16 | |
| C8.03 | Approach Horizontal Control Plan | 07/18/16 | |
| C8.04 | Approach Grading Plan | 07/18/16 | |
| C8.05 | Approach Grading Plan | 07/18/16 | |
| C8.06 | Approach Paving Plan | 07/18/16 | |
| C8.07 | Approach Paving Details | 07/18/16 | |
| C9.00 | Storm Drainage Area Map | 07/18/16 | |
| C9.01 | Partial Storm Drainage Plan | 07/18/16 | |
| C9.02 | Partial Storm Drainage Plan | 07/18/16 | |
| C9.03 | Storm Drainage Profiles | 07/18/16 | |
| C9.04 | Rain Garden Section and Details | 07/18/16 | |
| C10.00 | Master Utility Plan | 07/18/16 | |
| C10.01 | Water Plan | 07/18/16 | |
| C10.02 | Water Profiles | 07/18/16 | |
| C10.03 | Water Details | 07/18/16 | |
| C10.04 | Sewer Plan | 07/18/16 | |
| C10.05 | Sewer Profiles | 07/18/16 | |
| L1.00 | Landscape Notes & Details | 07/18/16 | |
| L1.01 | Overall Landscape Plan | 07/18/16 | |
| L1.02 | Landscape Plan | 07/18/16 | |
| L1.03 | Landscape Plan | 07/18/16 | |
| L1.04 | Landscape Plan | 07/18/16 | |
| L1.05 | Landscape Plan | 07/18/16 | |
| L1.06 | Irrigation Plan | 07/18/16 | |
| L1.07 | Irrigation Plan | 07/18/16 | |
| L1.08 | Irrigation Plan | 07/18/16 | |
| L1.09 | Irrigation Schedules and Notes | 07/18/16 | |
| L1.10 | Irrigation Details | 07/18/16 | |
| L1.11 | Irrigation Plan | 07/18/16 | |

SUBCONTRACTOR INITIALS

DTL BUILDERS INITIALS

Exhibit 1
Page 21 of 22

22

# EXHIBIT B – SCOPE CLARIFICATIONS

A.   WORK INCLUDED-SPECIFIC ITEMS OF WORK

The principal items of work shall include, but not be limited to the following:

1. Obtain and maintain in good standing all applicable State and Municipal Licenses and trade specific permits.
2. Coordination and compliance with all testing and inspection agencies.
3. Receiving, hoisting, lifting, storing and protection for all equipment and materials related to this scope of work.
4. Safety measures for inspectors.
5. All labor and materials are to be furnished in accordance with Plans and Specifications. No substitutions will be allowed.
6. Roofing per plans and specifications.

SUBCONTRACTOR INITIALS

DTL BUILDERS INITIALS
Exhibit 1
Page 22 of 22

Ri Ky Roofing & Sheet Metal LLC

PO Box 1746
Oregon City, OR 97045

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/11/2017 | 50964 |

**Bill To**

DTL Builders
3000 SW Corbeth Ln
Troutdale, OR 97060

| P.O. No. | Terms | 18% Annum rate if not p... |
|----------|-------|----------------------------|
|          | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | Winco Albany<br>3100 Pacific Blvd SE<br>Albany, OR 97321<br><br>Retainage | 17,442.47 | 17,442.47 |

| | |
|---|---|
| **Total** | $17,442.47 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $17,442.47 |

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| 503-477-4744 | 503-914-1968 | Tony.giang@ri-ky.com | www.Ri-Ky.com |

Exhibit 2
Page 1 of 3

Ri Ky Roofing & Sheet Metal LLC

PO Box 1746
Oregon City, OR 97045

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/10/2017 | 50826 |

**Bill To**

DTL Builders
3000 SW Corbeth Ln
Troutdale, OR 97060

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          | Due on receipt | Winco, Albany |

| Item | Description | Est Amt | Prior Amt | Prior % | Qty | Rate | Curr % | Total % | Amount |
|------|-------------|---------|-----------|---------|-----|------|--------|---------|--------|
|  | Winco Albany<br>3100 Pacific Blvd SE<br>Albany, OR 97321 |  |  |  |  |  |  |  |  |
| Roofing ...<br>Mark Up | Change order for Overtime<br>10% Profit per Contract |  |  |  | 318.5 | 178.00<br>10.00% |  |  | 56,693.00<br>5,669.30 |
| Retainage | Retainage |  |  |  |  | -3,118.12 |  |  | -3,118.12 |

| | |
|---|---|
| **Total** | $59,244.18 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $59,244.18 |

Exhibit 2
Page 2 of 3

Ri Ky Roofing & Sheet Metal LLC

PO Box 1746
Oregon City, OR 97045

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/20/2017 | 50805 |

Bill To

DTL Builders
3000 SW Corbeth Ln
Troutdale, OR 97060

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | Due on receipt | Winco, Albany |

| Item | Description | Est Amt | Prior Amt | Prior % | Qty | Rate | Curr % | Total % | Amount |
|------|-------------|---------|-----------|---------|-----|------|--------|---------|--------|
| | Winco Albany<br>3100 Pacific Blvd SE<br>Albany, OR 97321 | | | | | | | | |
| Roofing ... | Invoice 100% of estimate | 286487.00 | 229189.60 | 80.00% | 0.2 | 286,487.00 | 20.00% | 100.00% | 57,297.40 |
| Retainage | Retainage | | | | | -5.00% | | | -2,864.87 |

| | |
|---|---|
| **Total** | $54,432.53 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $54,432.53 |

Exhibit 2
Page 3 of 3

LINN COUNTY, OREGON **2017-07575**
L-CONST
Stn=0 K. PETERSON   04/27/2017 03:35:00 PM
$15.00 $11.00 $20.00                    $46.00

I, Steve Druckenmiller, County Clerk for Linn County, Oregon, certify
that the instrument identified herein was recorded in the Clerk
records.
                        Steve Druckenmiller - County Clerk

After Recording Return to:
MaryAnn Ivie, RP
Schwabe, Williamson & Wyatt
1211 SW 5th Avenue, Suite 1900
Portland, Oregon 97204
Our File: 124643-215202

## CLAIM OF CONSTRUCTION LIEN

**Lien Creditor:** Ri Ky Roofing & Sheet Metal LLC, an Oregon limited liability company

**Lien Debtor:** DTL Builders, Inc., a Utah Corporation, registered to do business in Oregon.

**Lien Amount:** $131,119.18, together with interest at the rate of nine eighteen percent (18%) per month on the principal balance of $131,119.18 accruing from April 14, 2017, until paid in full.

**Property Address:** 3100 Pacific Boulevard SE, Albany, Oregon, 97321

**Owners:** WinCo Foods LLC, the Anna M. Mitchell Marital Trust and the Alva M. Mitchell Family Trust

### 1.  Description of the Property

KNOW ALL MEN BY THESE PRESENTS: The undersigned, hereinafter called the claimant, performed construction services under a contract between claimant and DTL Builders, Inc. a Utah Corporation, who is or are the owner or agent or other person having charge of the services of that improvement commonly known as WinCo, located at 3100 Pacific Blvd SE, Albany, Oregon. Said improvement is situated upon certain land in the County of Linn, State of Oregon, which is the site of said improvement, legally described as follows:

Lot 2, Point Subdivision, in the City of Albany, Linn County Oregon. (Plat Volume 24, Page 43.)

(Tax Parcel No.: 0393062)

### 2.  Address of the Property

The address of said land is currently 3100 Pacific Blvd SE, Albany, Oregon 97321.

### 3.  Name of Owner or Reputed Owner

The name of the owners or reputed owners of said land are the Anna M. Mitchell Marital Trust and the Alva M. Mitchell Family Trust, and the owner of the improvements is WinCo Foods, LLC, who at all times herein mentioned had knowledge of the construction of said improvement. The name of any other owner or reported owner is otherwise unknown.

1 –CLAIM OF CONSTRUCTION LIEN
PDX\022222\100MAM\MAM20507623.1

THIS PAGE IS A PART OF
THE OFFICIAL DOCUMENT
PLEASE DO NOT REMOVE

Exhibit 3
Page 1 of 4

Recorded by Lawyers Title Insurance Corporation as an accommodation only. No liability is accepted for the condition of title or for the validity, sufficiency, or effect of this document.

LAWYERS  IC1737184

After Recording Return to:
MaryAnn Ivie, RP
Schwabe, Williamson & Wyatt
1211 SW 5th Avenue, Suite 1900
Portland, Oregon 97204
Our File: 124643-215202

CLAIM OF CONSTRUCTION LIEN

Lien Creditor:     Ri Ky Roofing & Sheet Metal LLC, an Oregon
                   limited liability company

Lien Debtor:       DTL Builders, Inc., a Utah Corporation, registered to
                   do business in Oregon.

Lien Amount:       $131,119.18, together with interest at the rate of nine
                   eighteen percent (18%) per month on the principal
                   balance of $131,119.18 accruing from April 14, 2017,
                   until paid in full.

Property Address: 3100 Pacific Boulevard SE, Albany, Oregon, 97321

Owners:           WinCo Foods LLC, the Anna M. Mitchell Marital
                  Trust and the Alva M. Mitchell Family Trust

1.     **Description of the Property**

       KNOW ALL MEN BY THESE PRESENTS: The undersigned, hereinafter called the
claimant, performed construction services under a contract between claimant and DTL Builders,
Inc. a Utah Corporation, who is or are the owner or agent or other person having charge of the
services of that improvement commonly known as WinCo, located at 3100 Pacific Blvd SE,
Albany, Oregon. Said improvement is situated upon certain land in the County of Linn, State of
Oregon, which is the site of said improvement, legally described as follows:

       Lot 2, Point Subdivision, in the City of Albany, Linn County Oregon. (Plat
       Volume 24, Page 43.)

       (Tax Parcel No.: 0393062)

2.     **Address of the Property**

       The address of said land is currently 3100 Pacific Blvd SE, Albany, Oregon 97321.

3.     **Name of Owner or Reputed Owner**

       The name of the owners or reputed owners of said land are the Anna M. Mitchell Marital
Trust and the Alva M. Mitchell Family Trust, and the owner of the improvements is WinCo
Foods, LLC, who at all times herein mentioned had knowledge of the construction of said
improvement. The name of any other owner or reported owner is otherwise unknown.

4.   **Person by Whom Claimant was Employed**

The name of the person who employed claimant to furnish construction services, and to perform said contract is DTL Builders, Inc..

5.   **Performance of Work**

Claimant commenced its performance on or about January 2, 2017and completed its performance on March 16, 2017, and provided and furnished all labor, materials, services, and equipment required by said contract and actually used in the construction of said improvement after which it ceased to provide labor or services, transfer materials, and/or rent equipment.

6.   **Notice of Right to a Lien**

N/A

7.   **True Statement of Demand Less Just Credits and Offsets**

The following is a true statement of claimant's demand after deducting all just credits and offsets, to-wit:

The reasonable value and contract amount of claimant's labor, services, materials and equipment is:

|  |  |
|---|---|
| Unpaid Labor | $126,605.37 |
| Unpaid Material | $4,513.81 |
| *Subtotal | $131,119.18 |
| Recording Fees ($43+$5 each page) | 53.00 |

**Balance Due Claimant**                    **$131,172,18**

Together with interest at the rate of eighteen percent (18%) per month on the principal balance of $131,172.18, from April 11, 2017 until paid in full.

8.   **Perfection of Lien**

Claimant claims a perfected lien for the amount last stated, $131,172.18 with interested thereon at 19% per annum from April 11, 2017 until paid, upon the said improvement and upon the site, to-wit: the land upon which said improvement is constructed/ monitored, together with the land that may be required for the convenient use and occupation of the improvement constructed/monitored on said site, to be determined by the court at the time of the foreclosure of this lien.

9.   **Miscellaneous**

a)     In construing this instrument, the masculine pronoun means and includes the feminine and the neuter and the singular includes the plural, as the circumstances may require.

2 –CLAIM OF CONSTRUCTION LIEN
PDX\022222\100\MA\MA\20507623.1

Exhibit 3
Page 3 of 4

**b)**      The paragraph captions are of convenience only and shall not be deemed to limit the terms or provisions of this claim of lien.

DATED this 27ᵗʰ day of April, 2017.

RI KY ROOFING & SHEET METAL, LLC, an
Oregon limited liability company

By: _____
                Tara Kramer, Manager

STATE OF OREGON          )
                                           ) ss.
County of Multnomah      )


I, Tara Kramer say as follows: that, subject to the penalties for false swearing provided under ORS 162.075, I am the Manager for claimant in the foregoing instrument; that I have knowledge of the facts therein set forth; that all statements made in said instrument are true and correct as I verily believe.

_____
Tara Kramer


SUBSCRIBED AND SWORN to before me this 27ᵗʰ day of April, 2017, by Tara Kramer, known to me, and the person whose signature appears above.

OFFICIAL STAMP
NANCY J MACFARLANE
NOTARY PUBLIC-OREGON
COMMISSION NO. 951075
MY COMMISSION EXPIRES JUNE 01, 2020

_____
Notary Public for Oregon
My commission expires: June 1, 2020

3 –CLAIM OF CONSTRUCTION LIEN
PDX\022222\100MAN\MAN\20507623.1

Exhibit 3
Page 4 of 4